IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**FREDDIE ROWELL, JR.,**
    Petitioner,

v.                                                  Case No.  4:08cv52/SPM/MD

**WALTER A. MCNEIL,**
    Respondent.
_____

### REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. 1).  Respondent has filed a motion to dismiss the petition as time barred, providing relevant portions of the state court record.  (Doc. 14). Petitioner has responded in opposition to dismissal.  (Doc. 17).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration, it is the opinion of the undersigned that the pleadings and attachments before the court show that the petition is untimely and should be dismissed.

### BACKGROUND AND PROCEDURAL HISTORY

On November 30, 1999 in the Circuit Court of Leon County, Florida, petitioner and four co-defendants (Waty Ryland, Maurice Bell, Ricky Ryland, and Alexander Bell) were charged by third amended information with Armed Robbery with a Deadly Weapon, a first degree felony punishable by life imprisonment.  (Doc. 14, Ex. B, pp.

9-10).[1]  Petitioner was tried jointly with co-defendants Waty Ryland and Maurice Bell on May 10-11, 2000.  (Ex. D).  Alexander Bell testified for the State.  (Ex. D, pp. 383-446).  On May 11, 2000, the jury found petitioner guilty of the lesser included offense of Robbery with a Weapon.  (Ex. B, p. 16; Ex. D, p. 659).  By judgment entered May 22, 2001, petitioner was adjudicated guilty of Robbery with a Weapon and sentenced to thirty years in prison.  (Ex. B, pp. 30-37).  His conviction and sentence were affirmed on direct appeal on April 18, 2002, without written opinion.  *Rowell v. State*, 814 So.2d 1034 (Fla. 1st DCA 2002) (Table) (copy at Ex. K).

On March 22, 2003 petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  (Ex. M, pp. 1-7).  The motion was summarily denied.  (*Id.*, pp. 6-29).  The Florida First District Court of Appeal ("First DCA") affirmed the denial order without written opinion on October 15, 2003.  *Rowell v. State*, 857 So.2d 884 (Fla. 1st DCA 2003) (Table) (copy at Ex. P).  The mandate issued on November 12, 2003.  (Ex. O).

On October 18, 2006, petitioner filed a second Rule 3.850 motion.  (Ex. Q, pp. 1-122).[2]  In this motion petitioner contended that newly discovered evidence demonstrated:  (1) that the prosecutor allowed perjury of his witness Alexander Bell

---

[1] Hereafter, all references to exhibits will be to those provided at Doc. 14, unless otherwise noted.

[2] Both parties state that this motion was filed on October 26, 2006. (Doc. 1, p. 3 in ECF; Doc. 14, p. 3 in ECF).  That is the date it was docketed in the state court. (Doc. 14, Ex. Q, p. 1).  Pursuant to the "mailbox rule," a document submitted by a prisoner to prison officials for mailing and filing in the intended forum is deemed to have been "filed" on the date it was delivered to prison officials for mailing.  *Day v. Hall*, 528 F.3d 1315, 1318 (11th Cir. 2008); *Adams v. United States*, 173 F.3d 1339, 1341 (11th Cir. 1999) (collecting cases).  The rule originated with *Houston v. Lack*, 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).  Florida consistently applies the mailbox rule with respect to prisoner post-conviction filings.  *Haag v. State*, 591 So.2d 614 (Fla. 1992) (applying mailbox rule to determine when Rule 3.850 motion was filed); *Thompson v. State*, 761 So.2d 324, 326 (Fla. 2000).  The record reflects that on October 18, 2006, petitioner gave the motion to prison officials for mailing.  (Ex. Q, p. 30).  The court therefore finds October 18, 2006 to be the date petitioner's second Rule 3.850 motion was filed.

Case No: 4:08cv52/SPM/MD

to go uncorrected,[3] (2) that the prosecutor violated *Brady*[4] when he failed to turn over during discovery a "Motion to Appoint Expert" concerning the competence of co-defendant Maurice Bell, (3) that the prosecutor "should have known that his star witness Alexander Bell was assured consideration would be given to him for his testimony, by his attorney Ms. Cheryl Gentry," and (4) that Alexander Bell's testimony was the product of prosecutorial coercion and threats. (*Id.*, pp. 7-27). On November 9, 2006, the Rule 3.850 court summarily denied the motion, finding there was "no new evidence of prosecutorial misconduct" and "no newly discovered evidence" concerning Alexander Bell or an alleged *Brady* violation. (*Id.*, pp. 123-24). The First DCA affirmed the denial order without written opinion on October 8, 2007. *Rowell v. State*, 965 So.2d 1146 (Fla. 1st DCA 2007) (Table) (copy at Ex. T).  On October 23, 2007, petitioner filed a motion for rehearing.[5] (Ex. R). The First DCA issued the mandate on October 25, 2007. (Ex. U). Petitioner filed a motion to recall the mandate. (Ex. V). On December 4, 2007, the First DCA denied the motion for rehearing and the motion to recall the mandate. (Ex. W).

Petitioner filed the instant federal habeas petition on January 29, 2008. (Doc. 1, p. 14 in ECF).[6] The petition raises two grounds for relief: (1) ineffective assistance of counsel for failure to timely move for severance of petitioner's trial from his co-defendants', and (2) "[n]ewly discovered evidence due to prosecution

---

[3]Specifically, petitioner contended that at trial Bell testified falsely when he denied having previously told his own attorney Ms. Gentry that he would not testify for the State. According to petitioner, Bell's perjury was revealed after the trial when Ms. Gentry testified in co-defendant Maurice Bell's Rule 3.850 evidentiary hearing that Bell had panicked before trial and told her he would not testify. (Ex. Q, pp. 7-8).

[4]*Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 251 (1963).

[5]The motion was docketed in the appellate court on October 26, 2007; however, it was delivered to prison officials for mailing on October 23, 2007. *See* note 2, *supra*.

[6]"Electronic Case Filing," the court's docketing system. References to ECF page numbers are to those assigned to the electronically scanned document.

threats to witness Alexander Bell, and recantation of Bell's testimony." (Doc. 1, pp. 5-8 in ECF).

## DISCUSSION

Because petitioner filed this § 2254 petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA governs the present petition. *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Pursuant to 28 U.S.C. § 2244, a one-year period of limitation applies to the filing of a federal habeas corpus petition by a person in custody pursuant to a state court judgment. The limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1). According to the tolling provision of § 2244(d), the time during which a "properly filed" application for state post-conviction or other collateral review is pending shall not be counted toward any period of limitation. 28 U.S.C. § 2244(d)(2).

In the instant case, petitioner has not asserted that a government-created impediment to filing this petition existed, or that he bases his claims on a right newly recognized by the United States Supreme Court. Thus, the limitations period runs from the latest of the remaining triggers: either the date petitioner's judgment became final, or the date on which the factual predicate of his newly discovered evidence claim could have been discovered through the exercise of due diligence.

As the following discussion demonstrates, the petition is time-barred under both provisions.

The First DCA affirmed petitioner's conviction on April 18, 2002. Petitioner did not move for rehearing in the DCA, nor did he seek review of his conviction in the Florida Supreme Court or in the United States Supreme Court. Accordingly, his judgment of conviction became "final" for purposes of § 2244 on July 17, 2002, when the ninety-day period in which to seek *certiorari* from the United States Supreme Court expired.[7]  *See* 28 U.S.C. § 2244(d)(1); *Bond v. Moore*, 309 F.3d 770, 773 (11th Cir. 2002) (holding that one-year limitations period for state inmate's filing of federal habeas petition began to run when the time expired for filing a petition for *certiorari* with the United States Supreme Court).

The limitations period ran for 247 days until petitioner filed his first Rule 3.850 motion on March 22, 2003. (Ex. M, p. 7). That motion was pending (and tolled the limitations period) from March 22, 2003 (the date it was filed) until November 12, 2003 (the date the First DCA issued the mandate on petitioner's appeal of the order denying relief).[8] The limitations period expired 118 days later on March 9, 2004. The instant petition was not filed until January 29, 2008. Therefore, assuming § 2244(d)(1)(A) controls, the petition is time-barred.

Even assuming § 2244(d)(1)(D) controls, the petition is untimely. As mentioned above, petitioner's second ground for relief asserts newly discovered evidence that the prosecutor coerced State witness Alexander Bell into testifying against petitioner and his co-defendants, and that Bell testified falsely at trial when he denied having made an agreement to testify on behalf of the State in exchange for consideration of leniency. (Doc. 1, p. 8 of ECF). In support of this ground, petitioner states that in December of 2005 he discovered two statements made by

---

[7]The 90-day period for filing in the United States Supreme Court a petition for a *writ of certiorari* seeking review of a decision of a state appellate court runs from the date of the state court's opinion, not the date of issuance of the mandate. *See* SUP. CT. R. 13.3; *see also Chavers v. Secretary, Florida Dep't of Corrections*, 468 F.3d 1273, 1275 (11th Cir. 2006).

[8]*See Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000) (recognizing that a "properly filed" state postconviction petition is "pending" under Florida procedure -- and consequently tolls the limitations period -- until the appellate court's issuance of the mandate on appeal).

Alexander Bell.  The first was a statement Bell gave on July 17, 2003 to co-defendant Maurice Bell's attorney Mary Kane.  (Ex. Q, pp. 31-53).  The second was Bell's testimony on October 9, 2003 at an evidentiary hearing in co-defendant Maurice Bell's post-conviction proceeding.  (*Id.*, pp. 54-122).  In essence, Alexander Bell stated in both instances that he lied at trial when he denied having a deal with the prosecutor, and that the prosecutor had threatened Bell that he better not "burn him" or "flip."  (Ex. Q, pp. 31-122).[9]

Petitioner states under oath that although Alexander Bell made the statements in 2003, he did not learn of them until early December of 2005.  (Doc. 17).  Petitioner explains:

> The newly discovered evidence, which is my claim in this court, was not received until December 2005.
>
> It was not known to me or my attorney until I received the case file from the state attorney's office.  Combing through the files I discovered the information that was given in Maurice Bell's evidentiary hearing that was held on October 9, 2003.
>
> I then found out that the state's main witness Alexander Bell had committed perjury and that state had threaten [sic] Alexander Bell, and coersed [sic] him to testify falsely.
>
> A friend of mine told me that I could request the state file, and that I didn't know his name was John D. Butler.
>
> Had I know [sic] this evidence earlier, I would have submitted this new evidence to the court, and I would have been granted relief as the other defendant had.[10]

(Doc. 17, p. 2 at ECF) (footnote added, paragraph numbers in original omitted).

---

[9]Alexander Bell stated that prior to testifying against petitioner and his co-defendants, he had been promised a sentence of two years with credit for two years time served followed by two years probation in exchange for his cooperation with the State.  In addition, Bell said the prosecutor had threatened him that if he "flipped" or "burned" him, he (the prosecutor) would have Ricky Ryland testify against Alexander Bell.  (*Id.*).

[10]Petitioner is apparently referring to the fact that Maurice Bell was granted an evidentiary hearing in state court, but petitioner was not.

*Case No: 4:08cv52/SPM/MD*

The relevant inquiry, however, is not when petitioner actually discovered Alexander Bell's post-trial statements, but when petitioner could have learned of the factual predicate of his claim through the exercise of due diligence. *Melson v. Allen*, 548 F.3d 993, 999 (11th Cir. 2008) (holding that "[t]he limitations period under § 2244(d)(1)(D) begins when the factual predicate of a claim could have been discovered using due diligence, not when it was actually discovered") (citing § 2244(d)(1)(D); *Schlueter v. Varner*, 384 F.3d 69, 74 (3rd Cir. 2004)). The court in *Melson* defined the showing a petitioner must make in establishing diligence:

> [T]he petitioner must show some good reason why he or she was unable to discover the facts at an earlier date. Merely alleging that an applicant did not actually know the facts underlying his or her claim does not pass the test. Instead, the inquiry focuses on whether a reasonable investigation . . . would have uncovered the facts the applicant alleges are newly discovered.

*Melson*, 548 F.3d at 999 (citation and internal quotation marks omitted); *see also Wilson v. Beard*, 426 F.3d 653, 661-62 (3rd Cir. 2005) (holding that whether a habeas petitioner has exercised due diligence is context-specific, and the essential question is "whether the petitioner should be expected to take actions which would lead him to the information."). It has been held that a petitioner can only avail himself of a later accrual date "if vital facts could not have been known." *Schlueter*, 384 F.3d at 74.

Petitioner's "newly discovered evidence" claim in Ground 2 has two factual predicates: (1) that the prosecutor coerced Alexander Bell to testify for the State, and (2) that the prosecutor failed to disclose his agreement with Alexander Bell (that Bell would testify in exchange for consideration of leniency) and failed to correct Bell's perjured testimony denying an agreement. (Doc. 1, p. 8 in ECF; Doc. 17, p. 2). Alexander Bell was a key witness for the State, and his motivation for testifying was of great interest to petitioner and his co-defendants. At trial Alexander Bell was questioned by the State and the three defense attorneys concerning his motivation for testifying. During direct examination, he was asked:

> Q: [Prosecutor]: Do you know how it is that I first learned that you were willing to testify against these defendants?

> A: [Alexander Bell]:  Through my lawyer, I think.
>
> Q:  And what is her name?
>
> A:  Cheryl Gentry.
>
> Q:  And did you, in fact, give her a statement similar to what you have given here before?  Did you give that same statement to Ms. Gentry?
>
> A:  Yes.
>
> Q:  Before that time, had you and I had any contact?
>
> A:  No.
>
> Q:  Have I ever offered you anything in return for your testimony?
>
> A:  No.
>
> Q:  As far as you know, you are going to prison, right?
>
> A:  Yes.
>
> Q:  Now, you are hoping for something, aren't you?
>
> A:  Yes.
>
> Q:  Let me ask you this.  If you are going to win the lottery, you've got to buy a ticket, right?
>
> A:  Yes.
>
> Q:  Now, you hope to win the lottery, don't you?
>
> A:  Yes.
>
> Q:  Have you won it yet?
>
> A:  No.

(Ex. D, pp. 410–11).

Alexander Bell was asked upon cross-examination by Mr. Holton, counsel for co-defendant Waty Ryland:

> Q: [Mr. Holton]: Now, the State Attorney asked you that you haven't had any discussions with him about a sentence or what you are going to receive in return for your testimony. But, isn't it true that you are testifying here with the hope that you are going to get a break on your sentence?
>
> A: [Alexander Bell]: Yes.

(Ex. D, p. 423).

Alexander Bell was asked upon cross-examination by Mr. Rand, counsel for co-defendant Maurice Bell:

> Q: [Mr. Rand]: In going back and talking about the deal you expect for your testimony, you didn't have, according to your testimony, any direct conversation with [the prosecutor], did you?
>
> A: [Alexander Bell]: Yes.
>
> Q: But you did have conversations with Ms. Gentry?
>
> A: Yes.
>
> Q: And you had repeated conversations with her about what to do in your case, correct?
>
> . . . .
>
> A: Yes.
>
> Q: And she told you you were going to prison for a long time, didn't she?
>
> A: She didn't say long, she just said I was going to prison.
>
> Q: She never told you you could get life imprisonment in this case?
>
> A: Yes, she said that I could receive life.
>
> Q: And that you could help yourself by testifying against the others, correct?
>
> A: Yes.
>
> Q: And that is why you are doing this, isn't it, sir?

>A: Yes, I was hoping –
>
>Q: Because you don't want to spend life in prison, do you?
>
>A: No.
>
>Q: And so your testimony is your effort to help yourself?
>
>A: Yes.
>
>. . . .
>
>Q: Haven't you told other people you expect probation in this case, sir?
>
>A: No.
>
>. . . .
>
>Q: Did you ever tell Maurice Bell's girlfriend you were going to get probation in this case?
>
>A: No.

(Ex. D, pp. 431-32, 434-35).

During cross-examination by petitioner's attorney Mr. Greenberg, Alexander Bell was questioned about the fact that his attorney Cheryl Gentry was sitting in the front row during his testimony:

>Q: [Mr. Greenberg]: Did you talk to her [Gentry] about the fact that you were going to be coming to court today, to see if she was going to come and watch you testify?
>
>A: [Alexander Bell]: She said – I talked to her. She said she probably would show up.
>
>Q: Because it's important to you, isn't it, that she is aware of what you are doing in this case, right?
>
>A: Yes.
>
>Q: So you want her to help you when it comes time to talk to [the prosecutor] about what's going to happen in your case?

> A: Meaning?
>
> Q: Well, you want her to know everything that you have done to help the prosecution, don't you?
>
> A: Yes.

(Ex. D, pp. 435-36).

In light of the foregoing, after petitioner's direct appeal concluded in April of 2002, he had every incentive to follow up on Alexander Bell's situation to see if there were any indications of prosecutorial misconduct, including an undisclosed deal. Yet petitioner does not assert that he made any effort to follow up on the issue either through investigating Bell or searching public records until December of 2005 when a fellow inmate happened to mention the availability of the State Attorney's Office file. Petitioner offers no explanation for this 3½ year delay, nor does he suggest that he was <u>unable</u> to discover the factual predicate of his claim sooner than he actually did.

Indeed, had petitioner accessed this same source of information (the State Attorney's Office file) within the three years preceding his 2005 request, he would have discovered the factual predicate of his claim. In September of 2002, prior to obtaining Alexander Bell's July 2003 statement, Maurice Bell filed an amended Rule 3.850 motion claiming newly discovered evidence of prosecutorial misconduct (failure to disclose a deal between Alexander Bell and the State). Attached to the motion was a sworn affidavit of Tilwanda Bivens asserting that Alexander Bell revealed to her that his trial testimony had been part of a deal. Maurice Bell's motion and attachment were part of the State Attorney's Office file in 2002, and were also a matter of public record in the state trial court. (Ex. Q, pp. 117-18 (referencing date Maurice Bell's amended motion was filed); *see also Maurice Bell v. James V. Crosby, Jr.*, Northern District of Florida Case Number 4:04cv505/MP/EMT, Doc. 10, Exs. I, J (copy of Maurice Bell's amended Rule 3.850 motion obtained from state court record and filed in this court as part of Bell's federal habeas proceeding)).

As Maurice Bell's Rule 3.850 motion proceeded through state court, more evidence of Alexander Bell's alleged recantation/disclosure emerged in the State Attorney's Office file and the state court record. The transcript of the October 9, 2003 evidentiary hearing was prepared on March 1, 2004, (ex. Q, p. 122), made part of the state trial and appellate court records on March 4, 2004,[11] and made part of the State Attorney's Office file on August 19, 2004. (Ex. Q, p. 54). On June 21, 2004, petitioner's co-defendant Waty Ryland filed a second Rule 3.850 motion in which he attached as "Exhibit B" the transcript of Alexander Bell's July 17, 2003 statement. Ryland's motion and exhibit were part of the State Attorney's Office file,[12] and were also part of the state trial court's public records, since June of 2004. (*See Waty Ryland v. Walter A. McNeil*, Northern District of Florida Case Number 4:08cv53/MP/WCS, Doc. 10, Ex. R (copy of Waty Ryland's second Rule 3.850 motion and exhibits obtained from state court record and filed in this court as part of Ryland's federal habeas proceeding)).

Thus, by the end of 2004, the factual predicate of petitioner's claim had been known to, and litigated by both of petitioner's co-defendants, and had been part of the State Attorney's Office file and the state court record for some time.[13] Had petitioner exercised reasonable diligence, he too could have discovered the factual predicate of his claim by that time, which is over one year before he actually discovered it. Petitioner's *pro se* status does not excuse his lack of diligence. *See Johnson v. United States*, 544 U.S. 295, 311, 125 S.Ct. 1571, 1582, 161 L.Ed.2d 542

---

[11]The transcript was filed with the Leon County Circuit Court and the Florida First DCA on or about March 4, 2004. *See* www.1dca.org, Case No. 1D03-5288, which is Maurice Bell's appeal of the denial of post-conviction relief.

[12]Petitioner used the copy of Ryland's "Exhibit B" obtained from the State Attorney's Office file to support his own Rule 3.850 motion. (*See* Ex. Q, p. 31).

[13]Indeed, by the end of 2004 Alexander Bell's alleged recantation/disclosure had also been made part of this court's public records as well. On December 17, 2004 Maurice Bell filed a § 2254 petition in this court. *See Maurice Bell v. James V. Crosby, Jr.*, Northern District of Florida Case Number 4:04cv505/MP/EMT. In his first ground for habeas relief, Maurice Bell extensively discussed Alexander Bell's 2003 statements in support of his claim that the prosecution failed to disclose favorable evidence (the fact that the prosecutor promised Bell a sentence of probation in exchange for his testimony). (*Id.*, Doc. 1, pp. 4, 7-20 in ECF).

(2005) (holding that federal prisoner failed to exercise due diligence in discovering the factual predicate of his claim for purposes of 28 U.S.C. § 2255, ¶ 6(4), and rejecting prisoner's suggestion that his delay should be excused because he was acting *pro se* and lacked the sophistication to understand relevant legal procedures: "[W]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness. . . .").[14] In light of the foregoing, petitioner's contention that his petition is timely under § 2244(d)(1)(D) should be rejected.[15] *Cf. Johnson v. United States*, 544 U.S. at 311, 125 S.Ct. at 1582 (holding that since there was every reason to believe that prompt action on the petitioner's part would have produced the factual predicate of his claim well over a year before he filed his § 2255 petition, the fourth paragraph of § 2255 (the provision analogous to § 2244(d)(1)(D)) was unavailable).

The Supreme Court of the United States has not squarely addressed the question whether equitable tolling applies to AEDPA's statute of limitations. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 n. 8, 125 S.Ct. 1807, 1814 n. 8, 161 L.Ed.2d 669 (2005). However, this court need not decide the issue because the petitioner in this case has neither claimed equitable tolling applies, nor alleged facts to suggest that he ever attempted to file his federal habeas petition within the limitations period, much less that he diligently pursued relief.[16] Thus, the doctrine of equitable tolling

---

[14]Section 2255, ¶ 6(4) is the almost identical counterpart to § 2244(d)(1)(D) that applies to motions by federal prisoners attacking their sentences. The Supreme Court has interpreted the statute of limitations provisions of § 2244 and § 2255 in concert with one another. *See, e.g., Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394, 402, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001) (plurality op. of O'Connor, J.).

[15]In other words, even applying § 2244(d)(1)(D), the limitations period would be triggered on December 31, 2004 and expire one year later on January 2, 2006 (December 31, 2005 was a Saturday), unless there were pending during that time any properly filed applications for post-conviction or other collateral review. The record reveals that no such application was pending between December 31, 2004 and January 2, 2006. Petitioner's second Rule 3.850 motion was not filed until October 18, 2006. The instant petition filed in January of 2008 is therefore time-barred.

[16]The Eleventh Circuit has allowed equitable tolling to mitigate application of § 2244(d)'s statutory deadline under very limited circumstances:

> Equitable tolling can be applied to prevent the application of AEDPA's statutory

*Case No: 4:08cv52/SPM/MD*

is inapplicable. Petitioner has not made a colorable showing of actual innocence under *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995). Alexander Bell's 2003 statements provide no evidence of petitioner's factual innocence, as Bell did not recant the substance of his testimony concerning petitioner's participation in the crime.

## CONCLUSION

Regardless of whether subsection (A) or subsection (D) of § 2244(d)(1) controls commencement of the limitations period, the instant petition is untimely. The record does not support application of the equitable tolling doctrine or any other exception to the limitations period.

Accordingly, it is respectfully RECOMMENDED:

1.  That respondent's motion to dismiss (doc. 14) be GRANTED.

2.  That the petition for writ of habeas corpus (doc. 1) challenging the conviction and sentence in *State of Florida v. Freddie J. Rowell, Jr.*, in the Circuit Court of Leon County, Florida, case number 99-1192, be DISMISSED WITH PREJUDICE.

3.  That the clerk be directed to close the file.

At Pensacola, Florida this 20th day of January, 2009.

/s/ *Miles Davis*
         MILES DAVIS
         UNITED STATES MAGISTRATE JUDGE

---

deadline when "extraordinary circumstances" have worked to prevent an otherwise diligent petitioner from timely filing his petition. Equitable tolling is an extraordinary remedy that is typically applied sparingly; however, it is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control *and* unavoidable even with diligence. The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner.

*Wade v. Battle*, 379 F.3d 1254, 1264-65 (11th Cir. 2004) (internal quotations and citations omitted; emphasis in original).

*Case No: 4:08cv52/SPM/MD*

## **NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636;** *United States v. Roberts,* **858 F.2d 698, 701 (11th Cir. 1988).**

*Case No: 4:08cv52/SPM/MD*